IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

CLIPPER BULK SHIPPING LTD.,

        Plaintiff,

v.

MICHIGAN SALT PRODUCTS LLC,
MICHIGAN BULK LLC,
ISLAND SIX HOLDINGS LLC,
ANDREW LINDAMOOD, and
SAMANTHA LINDAMOOD,

        Defendants.

Case No. 22-13007

Hon. George Caram Steeh

**MOTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 65 AND
LOCAL RULE 65.1 TO ISSUE TEMPORARY RESTRAINING ORDER AGAINST
CURRENT OWNER ISLAND SIX HOLDINGS LLC AND RELATED DEFENDANTS
FROM TRANSFERRING CERTAIN PROPERTIES
<u>UNDER THE UNIFORM VOIDABLE TRANSACTIONS ACT</u>**

Plaintiff CLIPPER BULK SHIPPING LTD. ("CLIPPER") hereby states for its ***noticed***[1] motion to issue a temporary restraining order under Rule 65 of the Federal Rules of Civil Procedure and Local Rule 65.1 against current owner Defendant ISLAND SIX HOLDINGS LLC ("ISLAND SIX") – as well as parties affiliated with former owner MICHIGAN SALT PRODUCTS LLC ("MICHIGAN SALT") and ISLAND SIX – from transferring three parcels of real property as follows:

---

[1] On January 9, 2023, this Court held that Clipper "may proceed in this matter … by serving a motion for injunctive relief on Defendants and allowing them an opportunity to respond." [Dkt. No. 9, at p. 4].

## INTRODUCTION

1. This *noticed* motion is to correct and avoid the fraudulent transfer by Defendant MICHIGAN SALT of its interest in three parcels of real property in Oakland County, Michigan to ISLAND SIX and/or to MICHIGAN BULK LLC, ANDY LINDAMOOD or SAMANTHA LINDAMOOD (collectively herein "Affiliates") to avoid collection of monies owed pursuant to an arbitration award entered on or about May 4, 2022 against MICHIGAN SALT.

## PARTIES

2. CLIPPER is a bulk cargo shipping company which charters ocean-going vessels from time to time to carry its cargoes. CLIPPER has its principal place of business in Copenhagen, Denmark, at Sundkrogsgade 19, 2100 Copenhagen, Denmark.

3. Upon information and belief, MICHIGAN SALT was a limited liability company, with a registered address of 1120 S. Lapeer Rd Suite 200, Oxford, Michigan 48371. MICHIGAN SALT members included Affiliates ANDREW LINDAMOOD and SAMANTHA LINDAMOOD (who are, upon information and belief, or were married). MICHIGAN SALT dissolved on December 10, 2021.

4. Upon information and belief, MICHIGAN BULK is a limited liability company, with a registered address of 1120 S. Lapper Road, Suite 200, Oxford, Michigan 48371. MICHIGAN BULK's registered agent is ANDREW LINDAMOOD. Upon information and belief, the members of MICHIGAN BULK are ANDREW LINDAMOOD and SAMANTHA LINDAMOOD.

5. Upon information and belief, ISLAND SIX is a limited liability company with a registered address of 1120 S. Lapper Road, Suite 200, Oxford, Michigan 48371. Upon information and belief, the members of ISLAND SIX are ANDREW LINDAMOOD and

SAMANTHA LINDAMOOD. ISLAND SIX's registered agent is Affiliate ANDY LINDAMOOD. ISLAND SIX's organizer is Affiliate SAMANTHA LINDAMOOD.

6. Upon information and belief, ANDREW LINDAMOOD is/was a member of MICHIGAN SALT, MICHIGAN BULK, and ISLAND SIX. Upon information and belief, ANDREW LINDAMOOD maintains the citizenship of the State of Michigan.

7. Upon information and belief, SAMANTHA LINDAMOOD is/was a member of MICHIGAN SALT, MICHIGAN BULK, and ISLAND SIX. Upon information and belief, SAMANTHA LINDAMOOD maintains the citizenship of the State of Michigan.

8. As described in further detail below, MICHIGAN SALT was the registered owner of three parcels of real property in Michigan: Parcel 09-33-351-003 [669 Brown Rd, Orion, MI 48359] ("Parcel No. 1"), Parcel 09-33-351-030 [657 Brown Rd, Orion, MI 48359] ("Parcel No. 2"), and Parcel 09-33-351-031 [647 Brown Rd, Orion, MI 48359] ("Parcel No. 3") (collectively the "Properties").

## JURISDICTION AND VENUE

9. Jurisdiction is proper pursuant to 28 U.S.C. § 1332.

10. Venue is proper because Defendant MICHIGAN SALT was a limited liability company in the state of Michigan and the Properties are located in Oakland County, Michigan.

## BACKGROUND

11. The at issue London arbitration concerned a dispute arising out of a Charterparty dated September 30, 2018 between CLIPPER, the disponent owners[2] of *MV NAESS INTREPID* (the "Vessel"), and MICHIGAN SALT, the charterers of the vessel under the Charterparty (the "Charterers"), on the NYPE 1993 Form, as amended between the parties.

---

[2] The term "disponent owner" is a term "often used loosely to describe anyone who charters a ship to another." 1 ROBERT FORCE ET AL., ADMIRALTY & MARITIME LAW (1st ed. 2008).

3

12. On January 15, 2019, CLIPPER appointed Mr. Allen as arbitrator.

13. On January 28, 2019, MICHIGAN SALT appointed Mr. Aston as arbitrator.

14. Both CLIPPER and MICHIGAN SALT were represented by counsel during the London arbitration.

15. On May 3, 2019, CLIPPER served the arbitration Claim Submissions on MICHIGAN SALT. *See* Declaration of Maria Svoldgaard Bork dated November 16, 2022 ("Bork Decl."), ¶ 4, at Ex. B.

16. On August 16, 2021, over two and a half years after selecting arbitrators and over two years after receiving the arbitration Claim Submissions, a warranty deed was executed by Affiliate SAMANTHA LINDAMOOD of MICHIGAN SALT to convey three parcels of real properties to Affiliate ISLAND SIX for the consideration of one-dollar. *See* Declaration of Melissa Gold dated December 12, 2022 ("Gold Decl."), ¶ 2, at Ex. A.

17. The warranty deed was for three parcels of real property: Parcel 09-33-351-003 [669 Brown Rd, Orion, MI 48359] ("Parcel No. 1"), Parcel 09-33-351-030 [657 Brown Rd, Orion, MI 48359] ("Parcel No. 2"), and Parcel 09-33-351-031 [647 Brown Rd, Orion, MI 48359] ("Parcel No. 3") (collectively the "Properties").

18. On October 28, 2021, the warranty deed was recorded and certified by the Oakland County Treasurer's Office to certify that there are no delinquent property taxes as of the date owed to its office on the property in question.

19. Upon information and belief, Parcel No. 1 has 2022 winter state equalized value of $53,470.

20. Upon information and belief, Parcel No. 2 has 2022 winter state equalized value of $22,860.

21. Upon information and belief, Parcel No. 3 has 2022 winter state equalized value of $61,140.

22. Upon information and belief, MICHIGAN SALT received unreasonable, inadequate, or no consideration for the execution of the warranty deed and the purported conveyance of the Properties to ISLAND SIX.

23. Upon information and belief, SAMANTHA LINDAMOOD of MICHIGAN SALT executed the warranty deed to convey its interest in the Properties to ISLAND SIX with the actual intent to hinder, delay, and defraud its creditors, including CLIPPER, and to prevent CLIPPER from executing upon the Properties to satisfy the anticipated arbitration award.

24. Upon information and belief, ISLAND SIX accepted conveyance of MICHIGAN SALT's interest in the Properties with knowledge of the pending arbitration and with the intent to prevent CLIPPER from executing upon the Properties.

25. Upon information and belief, the warranty deed and related transfer of the Properties was not disclosed in the arbitration or to the arbitrators, prior to transfer.

26. On November 19, 2021, counsel for CLIPPER emailed counsel for MICHIGAN SALT demanding payment of the Tribunal's reversed deductions totaling $150,354.23 plus legal costs. Counsel for MICHIGAN SALT responded by email stating the firm no longer represented MICHIGAN SALT, and instructing CLIPPER's counsel to contact MICHIGAN SALT directly, and providing MICHIGAN SALT's new contact information as Mr. Scott Lord of MICHIGAN BULK. *See* Bork Decl., ¶ 5, at Ex. C.

27. Upon information and belief, Affiliate MICHIGAN BULK was organized on May 11, 2021 during the pending arbitration. Upon information and belief, MICHIGAN SALT was liquidated and operations were transferred to Affiliate MICHIGAN BULK.

28. On December 7, 2021, during the pending arbitration and only 18-days after receiving an email demanding monies owed under the arbitration, MICHIGAN SALT filed a certificate of dissolution and was subsequently dissolved three-days later. *See* Gold Decl., ¶ 3, at Ex. B.

29. On May 4, 2022, the arbitration panel issued an award in favor of CLIPPER and against MICHIGAN SALT in the following amounts:

   a. Principal Sum of $150,354.23 (one hundred and fifty thousand three hundred and fifty four dollars and 23/100 cents) plus interest on the Principal Sum at a rate of 4% per annum, compounded at three monthly rests, for the period from December 6, 2018 until the date of payment of the Principal Sum;

   b. Recoverable costs at £13,165.35, together with compound interest on such costs at a rate of 4% per annum, compounded at three monthly rests from the date of the arbitration award until the date of payment; and

   c. Costs of arbitration award in the sum of £6,126.00, together with compound interest on such costs at a rate of 4% per annum, compounded at three monthly rests from the date of the arbitration award until the date of payment.

*See* Bork Decl., ¶ 6, at Ex. D.

30. MICHIGAN SALT has refused or otherwise failed to make full payment, or any payment for that matter, pursuant to the arbitration award.

31. MICHIGAN SALT has not taken an appeal of the arbitration award. Thus, the arbitration award is final and conclusive between the parties and is capable of enforcement.

32. The balance due on the arbitration award, excluding recoverable costs, compound interest, costs of arbitration, and costs accrued, is $150,354.23.

REQUEST:

**ISSUE TEMPORARY RESTRAINING ORDER AGAINST CURRENT OWNER DEFENDANT ISLAND SIX AND THE OTHER AFFILIATES FROM TRANSFERRING PROPERTIES UNDER UNIFORM VOIDABLE TRANSACTIONS ACT PENDING THIS COURT'S RULING ON CLIPPER'S REQUEST FOR A PRELIMINARY INJUNCTION PREVENTING THE TRANSFER OF THE PROPERTIES PENDING RESOLUTION OF THIS LITIGATION**

33.  CLIPPER files the instant *noticed* motion to enjoin the current owner Defendant ISLAND SIX and/or the other Affiliates from transferring the Properties under the Uniform Voidable Transactions Act ("UVTA") during the resolution of CLIPPER's confirmation of the arbitration award and demonstrating the fraudulent conveyance of the Properties.

34.  The UVTA "is designed to prevent debtors from transferring their property in bad faith before creditors can reach it." *Baum v. Baum*, No. 351269, 2021 WL 2618003, at *13 (Mich. Ct. App. June 24, 2021). The UVTA "permits a creditor to void a fraudulent asset transfer from a debtor." *Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 268 (6th Cir. 2021).

35.  The UVTA defines the term "covered asset" as "property of a debtor." Mich. Comp. Laws § 566.31(b). The Properties are covered assets of MICHIGAN SALT within the meaning of the UVTA. *Id.*

36.  The UVTA defines the term "claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 566.31(c). CLIPPER has a claim and right to payment within the meaning of the UVTA for $150,354.23, plus nearly another $50,000 in recoverable costs, compound interest, costs of arbitration, and costs accrued. *Id.*

37. The UVTA defines the term "creditor" as "person that has a claim." *Id.* § 566.31(d). CLIPPER is an entity that has a claim within the meaning of the UVTA. *Id.*

38. The UVTA defines the term "debtor" as "person that is liable on a claim." *Id.* § 566.31(f). MICHIGAN SALT is a debtor entity that is liable on a claim by CLIPPER within the meaning of the UVTA. *Id.*

39. The UVTA defines the term "covered transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset." *Id.* § 566.31(q). The warranty deed at issue is a covered transfer by which MICHIGAN SALT transferred the Properties to ISLAND SIX within the meaning of the UVTA.

40. Under the UVTA, "a transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation … (a) [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor … or (b) [w]ithout receiving a reasonably equivalent value in exchange for the transfer." *Id.* § 566.34. The warranty deed at issue transferring the Properties from MICHIGAN SALT to ISLAND SIX is voidable as to CLIPPER's claim within the meaning of the UVTA. *Id.* Upon information and belief, the transfer was made with the actual intent to hinder, delay, or defraud CLIPPER. Upon information and belief, MICHIGAN SALT did not receive a reasonably equivalent value in exchange for the transfer within the meaning of the UVTA. *Id.*

41. In an action for relief against a voidable transfer under the UVTA, a creditor may obtain an avoidance of the transfer to satisfy the creditor's claim, an attachment or other provisional remedy against the asset transferred or other property, an injunction against further disposition by the debtor of the asset transferred, appointment of a receiver to take charge of the asset transferred, and/or levy execution on the asset transferred. Mich. Comp. Laws § 566.37.

8

42. As it is unclear as to whether merely satisfying the elements of the UVTA empowers the Court to issue an injunction or whether a separate injunction examination need be undertaken, in an excess of caution CLIPPER addresses the suitability of its request for an injunction under the traditional test. Under Michigan state law, the test for preliminary injunction generally is a four-part test:

> (1) the likelihood that the party seeking the injunction will prevail on the merits, (2) the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued, (3) the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief, and (4) the harm to the public interest if the injunction is issued.

*Hammel v. Speaker of House of Representatives,* 297 Mich. App. 641, 648 (2012).[3]

43. Here, should a separate injunction analysis need to be undertaken here, CLIPPER respectfully submits that the test has been satisfied. First, CLIPPER already has won its claim against MICHIGAN SALT on the merits in the arbitration and merely seeks to have that arbitration award confirmed by this Court. Second, as shown by CLIPPER's petition, MICHIGAN SALT has sought to dissolve itself to make itself judgment-proof while transferring tangible assets to other entities. As early as 1940, the U.S. Supreme Court identified this as a circumstance – the non-moving party becoming insolvent and its assets in danger of dissipation or depletion – that satisfied the irreparable harm test as inaction by the court would result in the movant's legal remedy being inadequate. *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290 (1940). As for the third and fourth elements, no entity (other than possibly the Affiliates

---

[3] The Sixth Circuit employs a similar test: "[a] district court must balance four factors in determining whether to grant a preliminary injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Memphis A. Philip Randolph Inst. v. Hargett,* 978 F.3d 378, 385 (6th Cir. 2020).

9

which received the fraudulently-transferred Properties or other assets of MICHIGAN SALT) will be harmed by the injunction and it serves the public interest to preclude debtors from defrauding their creditors.

44. Indeed, with respect to proceeding against the Affiliates, "[w]hen someone creates new companies that are the 'mere continuity' of debtors, creditors may recover against them under Michigan law (and the law of most States)." *Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC,* 988 F.3d 260, 270 (6th Cir. 2021). Upon information and belief, ISLAND SIX and/or MICHIGAN BULK were created by ANDY LINDAMOOD and/or SAMANTHA LINDAMOOD as the mere continuity of MICHIGAN SALT. Thus, CLIPPER may recover against ISLAND SIX (or any other of the Affiliates possessing assets formerly owned by MICHIGAN SALT and conveyed without return of reasonably equivalent consideration) as well under Michigan law.[4]

45. As this Court's Order dated December 15, 2022 expressed concerns as to the issuance of the requested relief against ISLAND SIX "without notice or an opportunity to be heard," CLIPPER respectfully suggests that the issuance of a temporary restraining order pending ISLAND SIX's response to CLIPPER's requested relief is appropriate.

46. "To determine whether the issuance of a temporary restraining order is appropriate in this case, the Court considers (1) whether the movant has a strong likelihood of

---

[4] CLIPPER does not view it to be necessary to establish veil-piercing against the Affiliates in order to obtain the requested injunction. To the extent that such a finding is necessary, however, to pierce the corporate veil under Michigan law three requirements must be met: (1) the target corporate entity must be a "mere instrumentality" of another entity; (2) the target entity must have been used to commit a wrong; and (3) that wrong must have resulted in loss to the plaintiff/creditor. *Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC,* 988 F.3d 260, 271 (6th Cir. 2021). Here, MICHIGAN SALT, ISLAND SIX, and MICHIGAN BULK all share common office space and members/owners (ANDY and SAMANTHA LINDAMOOD). To the extent that they have received assets of MICHIGAN SALT, each of the Affiliates has committed a wrong, and that wrong was intended to cause CLIPPER a loss by depriving it of assets against which to recover on its arbitration award. Hence, should the Court determine that a veil-piercing analysis is appropriate, CLIPPER respectfully submits that it has made the appropriate initial showing to obtain the requested injunctive relief.

success on the merits, (2) whether the movant would suffer irreparable injury absent a TRO, (3) whether granting the TRO would cause substantial harm to others, and (4) whether the public interest would be served by granting the TRO." *Detroit Int'l Bridge Co. v. Fed. Highway Admin.,* 666 F. Supp. 2d 740, 746 (E.D. Mich. 2009) (citing *Ohio Republican Party v. Brunner,* 543 F.3d 357, 361 (6th Cir. 2008)).

47.  Here, as discussed above, each of these elements has been demonstrated. First, CLIPPER already has won its case on the merits in London arbitration and is owed money by MICHIGAN SALT. MICHIGAN SALT transferred the Properties without consideration during the pendency of that London arbitration, effectively rendering itself judgment-proof. These facts make out a *prima facie* case for relief under the UVTA. Second, MICHIGAN SALT's efforts to make itself judgment-proof to the detriment of its creditor CLIPPER satisfies the irreparable harm test. *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290 (1940). As for the third and fourth elements, no entity (other than possibly the Affiliates which received the fraudulently-transferred Properties or other assets of MICHIGAN SALT) will be harmed by the injunction and it serves the public interest to preclude debtors from defrauding their creditors.

WHEREFORE, Plaintiff CLIPPER BULK SHIPPING LTD. respectfully requests that the Court enter an Order:

  i. Issuing a temporary restraining order under Rule 65 of the Federal Rules of Civil Procedure and Local Rule 65.1 against further disposition by MICHIGAN SALT LLC or the current nominal owner ISLAND SIX HOLDINGS LLC, and/or any of the other Affiliates, from transferring the Properties under the Uniform Voidable Transactions Act pending resolution of Plaintiff CLIPPER BULK SHIPPING LTD.'s application for a preliminary injunction against MICHIGAN SALT LLC or the

current nominal owner ISLAND SIX HOLDINGS LLC, and/or any of the other Affiliates, from transferring the Properties under the Uniform Voidable Transactions Act confirmation of the arbitration award and demonstrating the fraudulent conveyance of the Properties; and

ii. Granting such other equitable relief as may be just and proper.

Dated: February 10, 2023

CLIPPER BULK SHIPPING LTD.

By: /s/ *Trisha M. Rich*
One of its Attorneys

Trisha M. Rich (P70710)
HOLLAND & KNIGHT LLP
150 North Riverside Plaza
Suite 2700
Chicago, Illinois 60606
Tel.: (312) 263-3600
Fax: (312) 578-6666
trisha.rich@hklaw.com
*Attorneys for Plaintiff*